## OSBORN MFG. CO. v. WM. H. NICHOLLS CO., Inc.

## No. 8021.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1940.

John F. Oberlin, of Cleveland, Ohio (Fay, Oberlin & Fay, John F. Oberlin, and Robert W. Wilson, all of Cleveland, Ohio, on the brief), for appellant.

Ernest F. Mechlin, of Washington, D.C. (Ernest F. Mechlin, Henry K. Muir, and Ritter, Mechlin & Muir, all of Washington, D. C., and Bulkley, Hauxhurst, Inglis & Sharp, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from the decree of the District Court holding Claims 1, 3, 8, 11, 14, 15, 17, and 18 of Patent No. 1,545,817, issued to Dunbeck July 14, 1925, valid and

infringed. Appellee is the assignee-owner of the patent, which relates to molding machines used for making molds of sand in which metals are cast. Appellant asserts the defenses of (1) anticipation, and (2) lack of invention.

The mold consists of two blocks of compacted sand, each of which has a hollow portion over one face thereof, called the "mold impression." The mold halves are made separately and placed together so that the two impressions form a single cavity into which the molten metal is poured through the "sprue," or opening. The upper half of the mold is called the "cope," and the lower half the "drag." The mold impression is formed in the sand by a "pattern," made of metal or wood, affixed to the "pattern plate," upon which rests the "flask," or rectangular box which holds the sand. The pattern plate constitutes the bottom side of the flask, which is in effect an open-topped box into which the pattern projects. Sand is put in the flask and by a jolting or jarring operation is compacted firmly in the flask and around the pattern. The sand is then further squeezed and compacted so that when the pattern plate is withdrawn, the sand will support itself in the desired shape. The operation of withdrawing the pattern is called "drawing," and may be accomplished either by raising the flask and its contained sand above the pattern and pattern plate, called "up drawing," or by lowering the pattern and pattern plate below the flask, called "down drawing." Thus there are three steps in molding, (1) jolting, (2) squeezing, and (3) drawing.

There are two types of molding machines commonly used in the industry, (1) the "roll-over" type, and (2) the "jolt squeeze stripper" type, the latter commonly called the "stripper" type. In the stripper type the flask is put on the jolt table, filled with sand, jolted and then by means of a piston the flask, still on the jolt table, is raised up against the squeeze head, which further packs the sand. The pattern is then withdrawn and the mold removed. In the roll-over machine, the roll-over table is pivoted about a transverse axis so that the flask containing the sand is inverted during the process, the mold being disposed below the pattern at the completion of the drawing operation. After the flask is filled with sand, covering the pattern, a "bottom board" is placed on top of the flask and the roll-over table is then jolted. The flask is then rolled over, and the sand is squeezed by the raising of the jolt-table. When the jolt-table holding the flask is lowered, the pattern is drawn, for it remains supported by the roll-over table while the flask descends on the jolt-table. Thus in the stripper type the impression in the completed half of the mold is in the lower face, while in the roll-over type it is in the upper face. The stripper type is best adapted for making copes (upper halves) and the roll-over for making drags (lower halves), although obviously either machine can be used for either purpose.

The principal object of Dunbeck was to provide means by which the mold could be removed from the machine by rolling, instead of being lifted by hand, crane or hoist. Such means, attached to roll-over machines, were old in the art. But prior to Dunbeck, the jolt squeeze stripper type had no such conveying means. Dunbeck accomplishes the desired result by means of a pair of conveyor bars with rollers attached thereto, pivoted at one end, with a lever arrangement at the other end to raise the conveying means against the flask and separate it from the flask support, thus permitting the flask containing the mold to be rolled off of and away from the molding machine. The specifications provide that "The flask elevating means is mounted wholly on the flask supporting frame and moves up and down with it."

While we have considered all claims presented on appeal, inasmuch as appellee regards Claims 3 and 14 (printed in the margin) [1] as representative, we shall discuss these only.

[1] "3. A molding machine comprising a pattern plate holding means, a flask supporting means, means for holding the flask supporting means to withdraw the pattern from the mold, and shiftable flask lifting and conveying means for raising the flask free from the flask supporting means and positioning it for outward movement away from the machine over said conveying means."

"14. A foundry apparatus comprising a flask support, a pattern drawing mechanism, a flask conveyor track located adjacent the flask support, and means to cause a relative vertical movement between the flask support and the conveyor track to cause the conveyor track and a flask on the support to be brought into engagement with each other and the flask thereby separated from the flask support

On the point of anticipation, Hudson, No. 772,042 (1904) is for a molding machine of the roll-over type. In the drawings and specifications, the use of rails as a conveyor is disclosed. The flask support is designed so as to be lowered between two rails, after the drawing operation is completed, resulting in the flask being deposited upon the rails or conveyor and the mold is then removed from the machine. This device is substantially that of Dunbeck, except that no rollers are incorporated for the removal of the mold, but it seems to us that they constitute a well-known mechanical expedient not amounting to invention.

Griffith, No. 798,897 (1905) also is for a molding machine of the roll-over type. The drawings, specifications and claims all provide for the mold to be deposited upon a truck by the lowering of the flask support. The truck is equipped with rollers which rest upon tracks affixed to the supports of the roll-over table, and can be rolled out of the machine. The essential differences between this device and the one in suit is that (1) in Griffith the wheels are attached to the truck, while in Dunbeck the wheels are on fixed axes on the rails or tracks, and thereby constitute a conveyor, and (2) in Griffith the flask support is lowered below the level of the truck to allow the truck to support the mold, while in Dunbeck the conveyor is raised so as to lift the mold from the flask support. We regard these differences as immaterial, for in each case the Dunbeck device performs the same function, and is the mechanical equivalent of Griffith.

Carman, No. 1,357,380 (1920) is for a roll-over molding machine and resembles Griffith in the roll-off device. Our discussion as to Griffith applies also to Carman, and will not be repeated.

Appellant designed, made and delivered in January, 1924, a roll-over molding machine (called the "Berea" machine) to a user in Berea, which embodied a roll-off device. In this machine the rollers were mounted on the jolt-squeeze table, and, as in Dunbeck, they could be positioned so as to free the flask support and lift it upon the rollers to be run off as desired. There is no showing in the record placing Dunbeck's conception at any earlier date than the filing of his application on April 25, 1924, and this device clearly anticipates unless the fact that it is attached to a roll-over machine precludes such a conclusion.

The District Court found that Dunbeck's stripper machine was not anticipated by Hudson, Griffith, Carman, or the Berea machine, prior art devices, because they all relate to roll-over molding machines and cannot be applied to or be used with a stripper type.

We disagree with this conclusion, although one witness states that the roll-off device in the Berea machine could not be transferred bodily to the Dunbeck machine. Neither could a roll-off device in one Dunbeck machine be transferred bodily to another Dunbeck machine, designed to make molds of a different size. The prior art anticipates, and also establishes lack of invention. The problem is merely one of mechanical adaptation of a conveyor or device on a roll-over machine for use in a stripper machine. The concept of Dunbeck is not essentially different from that of Hudson and Griffith. He simply applied ordinary mechanical skill to accomplish the same object on a different type of molding machine. Dunbeck brought the rollers or conveyors in contact with the bottom face of the mold to facilitate its removal by raising the conveyor rails by a lever device, while in Hudson and Griffith the same object was accomplished by the descent of the mold support or jolt-table until the mold rested upon the conveyor device. In its principal features, the Dunbeck roll-off is the same as that of the Berea machine.

We conclude that the claims involved in the appeal are invalid.

We think the claims are also invalid as being for an aggregation, for they merely call for the use of rollers as conveyors for facilitating removal of the mold for the mold machine. The rollers in no way interact with the rest of the machine as an integral part thereof.

The claims being held invalid, it is unnecessary to consider infringement.

The decree is reversed, and the cause is remanded for proceedings in conformance with this opinion.

and transferred directly to the conveyor track in position to be moved laterally over and along the conveyor track above

the flask support outwardly from the apparatus."